**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| GERARDO MALDONADO JR., Derivatively on Behalf of Nominal Defendant THE GEO GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> GEORGE C. ZOLEY, BRIAN R. EVANS, ANNE N. FOREMAN, DUANE HELKOWSKI, RICHARD H. GLANTON, JOSE GORDO, SCOTT M. KERNAN, GUIDO VAN HAUWERMEIREN, CHRISTOPHER C. WHEELER, JULIE MYERS WOOD, J. DAVID DONAHUE, ANN M. SCHLARB, and DAVID VENTURELLA, <br><br> Defendants, <br><br> and <br><br> THE GEO GROUP, INC., <br><br> Nominal Defendant. | Case No. 9:22-CV-81310-AMC <br><br> **VERIFIED AMENDED STOCKHOLDER DERIVATIVE COMPLAINT** |

Plaintiff Gerardo Maldonado Jr. ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant, The GEO Group, Inc. ("GEO" or the "Company"), against its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties and violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by GEO with the U.S. Securities and Exchange

1

Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

I.     **NATURE AND SUMMARY OF THE ACTION**

1.     GEO operates over 100 prisons with approximately 86,000 beds. The Company also provides reentry and electronic monitoring and supervision services for more than 250,000 individuals. Since 2014, the Company has been subject to several lawsuits alleging that GEO profits from forced labor by paying immigrant detainees $1 for a day's work.

2.     Throughout fiscal 2018 and early 2019, the Board represented that it "does not expect the outcome of any pending claims or legal proceedings to have a material adverse effect on its financial condition . . . ."

3.     However, in non-public correspondence, management pled for federal financial support because the lawsuits had already proven costly to defend and exposed the Company to "tens of millions" in damages if successful. This emerged on July 17, 2019 when media published the correspondence, which was obtained pursuant to a Freedom of Information Act request. Among other things, GEO wrote that the "legal discovery costs could total several millions of dollars and potential damages could be in the tens of millions." On this news, the Company's stock fell $1.48, or 7.9%, to close at $17.24 per share on July 19, 2019, on unusually heavy trading volume.

4.     These revelations precipitated the filing of a securities class action in this District against GEO and certain of the defendants named herein, captioned *Hartel v. The GEO Group, Inc., et al.*, Case No. 9:20-cv-81063 (the "Securities Class Action"). On September 23, 2021, U.S. District Judge Rodney Smith denied-in-part the motion to dismiss by defendants in the Securities Class Action, holding that a claim for securities fraud had been stated against GEO and its former CEO. It is now a virtual certainty that GEO will incur significant liability due to the fiduciary

breaches committed by defendants when they issued misleading statements about the Company's revenue.

5. Plaintiff did not make a litigation demand prior to filing this action because such action would have been futile based upon the composition of the Board and the actions taken by the Board, as alleged herein.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: violations of Section 10(b) of the Exchange Act. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because the Company is incorporated in Florida and is thus a citizen of this District. Additionally, the Company's bylaws contain a forum selection clause requiring shareholder derivative actions like this one to be filed in this District.

## III. PARTIES

**Plaintiff**

8. Plaintiff Gerardo Maldonado Jr. purchased shares of GEO stock in March 2017 and has continuously owned his GEO stock since that date. He currently owns 2,843 shares.

**Nominal Defendant**

9. Nominal Defendant GEO is a Florida corporation with its principal executive offices located at 4955 Technology Way, Boca Raton, Florida 33431. The Company's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "GEO."

**Defendants**

10. Defendant George C. Zoley ("Zoley") is the founder of GEO. He has served as a director of the Company since 1988 and served as its Chief Executive Officer ("CEO") from 1994 to July 1, 2021. He is named as a defendant in the Securities Class Action.

11. Defendant Anne N. Foreman ("Foreman") has served as a director of the Company since 2002

12. Defendant Scott Kernan ("Kernan") has served as a director of the Company since 2018.

13. Defendant Julie Myers Wood ("Wood") has served as a director of the Company since 2014.

14. Defendant Richard H. Glanton ("Glanton") served as a director of the Company from 1998 to April 2022. He was a member of the Audit and Finance Committee ("Audit Committee").

15. Defendant Guido Van Hauwermeiren ("Van Hauwermeiren") served as a director of the Company from 2018 to July 2021. He was a member of the Audit Committee.

16. Defendant Christopher Wheeler ("Wheeler") served as a director of the Company from 2010 to April 2022. He was a member of the Audit Committee.

17. Defendants Zoley, Foreman, Kernan, Wood, Glanton, Van Hauwermeiren, and Wheeler are sometimes referred to hereinafter as the "Individual Defendants."

18. Jose Gordo ("Gordo") has been a director of GEO since October 2019 and CEO of the Company since July 2021.

IV.  **DUTIES OF THE INDIVIDUAL DEFENDANTS**

19. By reason of their positions as officers, directors, and/or fiduciaries of GEO and because of their ability to control the business and corporate affairs of GEO, at all relevant times,

the Individual Defendants owed GEO and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage GEO in a fair, just, honest, and equitable manner. The Individual Defendants were required to act in furtherance of the best interests of GEO and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to GEO and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

20. The Individual Defendants, because of their positions of control and authority as directors and/or officers of GEO, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with GEO, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

21. To discharge their duties, the officers and directors of GEO were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of GEO were required to, among other things:

(a) Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(b) Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

(c) Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

  (d) When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

## V. SUBSTANTIVE ALLEGATIONS

### A. Background

22. At all relevant times, GEO was a real estate investment trust ("REIT") that operates over 100 prisons with approximately 86,000 beds.[1] The Company also provides reentry and electronic monitoring and supervision services for more than 250,000 individuals. It has 4 reportable segments: U.S. Secure Services; Electronic Monitoring and Supervision Services; Reentry Services; and International Services.

23. For the last three decades, GEO has had long-term contracts with the federal government to provide services for the Federal Bureau of Prisons, Immigration and Customs Enforcement ("ICE"), and the Marshal Service.

24. The Company has been subject to several lawsuits for its treatment of immigrant detainees (referred to hereinafter as the "Pending Lawsuits"):

  (a) *Menocal v. GEO Group, Inc.*, No. 14-cv-02887 (D. Colo.) alleges that GEO was using forced labor and unjustly enriching itself by paying immigrant detainees $1 for a day's work. In February 2018, the Tenth Circuit affirmed the district court's certification of the class of immigrant detainees. Motions for summary judgment are still pending.

  (b) Two lawsuits in the State of Washington, *State of Washington v. The GEO Group, Inc.*, No. 17-cv-05806 (W.D. Wash.) and *Chao Chen v. The GEO Group, Inc.*, 17:cv-5769 (W.D. Wash.), alleged that the Company must comply with Washington's state minimum wage

---

[1] Effective since the year ended December 31, 2021, GEO became a taxable C corporation and is no longer required to operate under REIT rules.

laws for immigrant detainee work. By February 2018, GEO had spend approximately $442,000 in defending these suits. In October 2021, a jury awarded $17,297,063.05 in damages to the class plaintiffs, for which the court awarded pre-judgment interest in the amount of $8,087,663.57. *Chao Chen v. The GEO Group, Inc.*, 17-cv-5769 (W.D. Wash.), ECF Nos. 519,561. In November 2021, judgment was entered against GEO in the amount of $5,950,340, following a decision by the court. *State of Washington v. The GEO Group, Inc.*, No. 17-cv-05806 (W.D. Wash.), ECF No. 630. The Company has appealed the judgments, and oral argument is scheduled for October 2022.

(c) *Novoa v. The GEO Group, Inc.*, No. 17-cv-02514 (C.D. Cal.) similarly alleges that immigrant detainees at the Adelanto, California facility suffer unlawful wage theft because they are only paid $1 for a day's work. In June 2018, the Company's motion to dismiss was denied-in-part, and in January 2022, the Company's motion for summary judgment was denied-in-part while plaintiff's motion for summary judgment was granted-in-part.

**B.  The Individual Defendants Cause the Company to Issue Materially Misleading Statements**

25.  On November 8, 2018, the Individual Defendants caused GEO to file its quarterly report on Form 10-Q for the period ended September 30, 2018, stating:

> On October 22, 2014, former civil immigration detainees at the Aurora Immigration Detention Center filed a class action lawsuit against the Company in the United States District Court for the District of Colorado (the "Court"). The complaint alleges that the Company was in violation of the Colorado Minimum Wages of Workers Act and the federal Trafficking Victims Protection Act ("TVPA"). The plaintiff class claims that the Company was unjustly enriched as a result of the level of payment the detainees received for work performed at the facility, even though the voluntary work program as well as the wage rates and standards associated with the program that are at issue in the case are authorized by the Federal government under guidelines approved by the United States Congress. On July 6, 2015, the Court found that detainees were not employees under the Colorado Minimum Wage Order and dismissed this claim. In February 2017, the Court granted the plaintiff-class' motion for class certification which the Company appealed to the 10th Circuit Court of Appeals. On February 9, 2018, a three-judge panel of the appellate court affirmed the class-certification order. A petition for rehearing en banc was denied on March 7, 2018. On October 2, 2018, the U.S. Supreme Court denied the Company's petition for a writ of certiorari on the

class certification order. The plaintiff class seeks actual damages, compensatory damages, exemplary damages, punitive damages, restitution, attorneys' fees and costs, and such other relief as the Court may deem proper. In the time since the Colorado suit was initially filed, three similar lawsuits have been filed – two in Washington and one in California. In Washington, one of the two lawsuits was filed on September 9, 2017 by immigration detainees against the Company in the U.S. District Court for the Western District of Washington. The second was filed on September 20, 2017 by the State Attorney General against the Company in the Superior Court of the State of Washington for Pierce County, which the Company removed to the U.S. District Court for the Western District of Washington on October 9, 2017. In California, a class-action lawsuit was filed on December 19, 2017 by immigration detainees against the Company in the U.S. District Court Eastern Division of the Central District of California. All three lawsuits allege violations of the respective state's minimum wage laws. However, the California lawsuit, like the Colorado suit, also includes claims based that the Company violated the TVPA and California's equivalent state statute. The Company intends to take all necessary steps to vigorously defend itself and has consistently refuted the allegations and claims in these lawsuits. ***The Company has not recorded an accrual relating to these matters at this time, as a loss is not considered probable nor reasonably estimable at this stage of the lawsuit.***

The nature of the Company's business exposes it to various types of third-party legal claims or litigation against the Company, including, but not limited to, civil rights claims relating to conditions of confinement and/or mistreatment, sexual misconduct claims brought by prisoners or detainees, medical malpractice claims, product liability claims, intellectual property infringement claims, claims relating to employment matters (including, but not limited to, employment discrimination claims, union grievances and wage and hour claims), property loss claims, environmental claims, automobile liability claims, indemnification claims by its customers and other third parties, contractual claims and claims for personal injury or other damages resulting from contact with the Company's facilities, programs, electronic monitoring products, personnel or prisoners, including damages arising from a prisoner's escape or from a disturbance or riot at a facility. ***The Company does not expect the outcome of any pending claims or legal proceedings to have a material adverse effect on its financial condition, results of operations or cash flows.*** However, the results of these claims or proceedings cannot be predicted with certainty, and an unfavorable resolution of one or more of these claims or proceedings could have a material adverse effect on the Company's financial condition, results of operations or cash flows.

26.     On February 14, 2019, during the earnings call held in connection with the Company's fourth quarter 2018 financial results, GEO's Chief Financial Officer stated: "We believe we have adequately accounted for known legal cases in our guidance for 2019."

8

27. On February 25, 2019, defendants Zoley, Evans, Kernan, Wood, Foreman, Glanton, Wheeler, and Van Hauwermeiren signed and caused GEO to file its annual report on Form 10-K for the period ended December 31, 2018, stating:

> As previously reported and described in our prior periodic reports, including most recently in our Form 10-Q for the quarter ended June 30, 2018, on February 8, 2017, former civil immigration detainees at the Aurora Immigration Detention Center filed a class action lawsuit on October 22, 2014, against the Company in the United States District Court for the District of Colorado (the "Court"). The complaint alleges that the Company was in violation of the Colorado Minimum Wages of Workers Act and the federal Trafficking Victims Protection Act ("TVPA"). The plaintiff class claims that the Company was unjustly enriched because of the level of payment the detainees received for work performed at the facility, even though the voluntary work program as well as the wage rates and standards associated with the program that are at issue in the case are authorized by the Federal government under guidelines approved by the United States Congress. On July 6, 2015, the Court found that detainees were not employees under the Colorado Minimum Wage Order and dismissed this claim. In February 2017, the Court granted the plaintiff-class' motion for class certification. The plaintiff class seeks actual damages, compensatory damages, exemplary damages, punitive damages, restitution, attorneys' fees and costs, and such other relief as the Court may deem proper. In the time since the Colorado suit was initially filed, three similar lawsuits have been filed — two in Washington and one in California. In Washington, one of the two lawsuits was filed on September 9, 2017 by immigration detainees against the Company in the U.S. District Court for the Western District of Washington. The second was filed on September 20, 2017 by the State Attorney General against the Company in the Superior Court of the State of Washington for Pierce County, which the Company removed to the U.S. District Court for the Western District of Washington on October 9, 2017. In California, a class-action lawsuit was filed on December 19, 2017 by immigration detainees against the Company in the U.S. District Court Eastern Division of the Central District of California. All three lawsuits allege violations of the respective state's minimum wage laws. However, the California lawsuit, like the Colorado suit, also includes claims based that the Company violated the TVPA and California's equivalent state statute. The Company intends to take all necessary steps to vigorously defend itself and has consistently refuted the allegations and claims in these lawsuits. ***The Company has not recorded an accrual relating to these matters at this time, as a loss is not considered probable nor reasonably estimable at this stage of the lawsuit.***
>
> The nature of the Company's business exposes it to various types of third-party legal claims or litigation against the Company, including, but not limited to, civil rights claims relating to conditions of confinement and/or mistreatment, sexual misconduct claims brought by prisoners or detainees, medical malpractice claims, product liability claims, intellectual property infringement claims, claims relating to employment matters (including, but not limited to, employment discrimination claims, union grievances and wage and hour claims), property loss claims, environmental claims, automobile liability claims, indemnification claims by its customers and other third

9

...

parties, contractual claims and claims for personal injury or other damages resulting from contact with the Company's facilities, programs, electronic monitoring products, personnel or prisoners, including damages arising from a prisoner's escape or from a disturbance or riot at a facility. The Company accrues for legal costs associated with loss contingencies when those costs are probable and reasonably estimable. ***The Company does not expect the outcome of any pending claims or legal proceedings to have a material adverse effect on its financial condition, results of operations or cash flows.***

28. On May 6, 2019, the Individual Defendants caused GEO to file its quarterly report on Form 10-Q for the period ended March 31, 2019, stating:

As previously reported and described in the Company's prior periodic reports, including most recently in our Form 10-K for the year ended December 31, 2018, on February 8, 2017, former civil immigration detainees at the Aurora Immigration Detention Center filed a class action lawsuit on October 22, 2014, against the Company in the United States District Court for the District of Colorado (the "Court"). The complaint alleges that the Company was in violation of the Colorado Minimum Wages of Workers Act and the federal Trafficking Victims Protection Act ("TVPA"). The plaintiff class claims that the Company was unjustly enriched because of the level of payment the detainees received for work performed at the facility, even though the voluntary work program as well as the wage rates and standards associated with the program that are at issue in the case are authorized by the Federal government under guidelines approved by the United States Congress. On July 6, 2015, the Court found that detainees were not employees under the Colorado Minimum Wage Order and dismissed this claim. In February 2017, the Court granted the plaintiff-class' motion for class certification. The plaintiff class seeks actual damages, compensatory damages, exemplary damages, punitive damages, restitution, attorneys' fees and costs, and such other relief as the Court may deem proper. In the time since the Colorado suit was initially filed, three similar lawsuits have been filed - two in Washington and one in California. In Washington, one of the two lawsuits was filed on September 9, 2017 by immigration detainees against the Company in the U.S. District Court for the Western District of Washington. The second was filed on September 20, 2017 by the State Attorney General against the Company in the Superior Court of the State of Washington for Pierce County, which the Company removed to the U.S. District Court for the Western District of Washington on October 9, 2017. In California, a class-action lawsuit was filed on December 19, 2017 by immigration detainees against the Company in the U.S. District Court Eastern Division of the Central District of California. All three lawsuits allege violations of the respective state's minimum wage laws. However, the California lawsuit, like the Colorado suit, also includes claims that the Company violated the TVPA and California's equivalent state statute. The Company intends to take all necessary steps to vigorously defend itself and has consistently refuted the allegations and claims in these lawsuits. ***The Company has not recorded an accrual relating to these matters at this time, as a loss is not considered probable nor reasonably estimable at this stage of the lawsuit.***

The nature of the Company's business exposes it to various types of third-party legal claims or litigation against the Company, including, but not limited to, civil rights

claims relating to conditions of confinement and/or mistreatment, sexual misconduct claims brought by prisoners or detainees, medical malpractice claims, product liability claims, intellectual property infringement claims, claims relating to employment matters (including, but not limited to, employment discrimination claims, union grievances and wage and hour claims), property loss claims, environmental claims, automobile liability claims, indemnification claims by its customers and other third parties, contractual claims and claims for personal injury or other damages resulting from contact with the Company's facilities, programs, electronic monitoring products, personnel or prisoners, including damages arising from a prisoner's escape or from a disturbance or riot at a facility. ***The Company does not expect the outcome of any pending claims or legal proceedings to have a material adverse effect on its financial condition, results of operations or cash flows.*** However, the results of these claims or proceedings cannot be predicted with certainty, and an unfavorable resolution of one or more of these claims or proceedings could have a material adverse effect on the Company's financial condition, results of operations or cash flows.

29. The above statements in ¶¶ 25-28 were materially misleading because they failed to disclose: (1) that the Pending Lawsuits presented a "potentially catastrophic risk to GEO's ability to honor its contracts with the federal government"; (2) that the Company had already incurred significant costs defending the Pending Lawsuits; (3) that GEO would incur "tens of millions" in potential damages if the Pending Lawsuits were successful; and (4) that, as a result of the foregoing, GEO expected to incur a significant loss related to the Pending Lawsuits.

C. **The Truth Fully Emerges**

30. On July 17, 2019, after the market opened, *The Daily Beast* published an article entitled "Private Prison Bosses Beg Taxpayers to Pay Human-Trafficking Lawsuit Bills." The article highlighted the stark contrast between GEO's public disclosures and the Company's internal concerns: "In a series of emails, prison execs pleaded with ICE to pick up their multimillion-dollar tab. At the same time, they argued to shareholders that the suits were no big deal." According to emails obtained pursuant to the Freedom of Information Act, the article reported that GEO's senior vice president of business development pled to ICE: "GEO cannot bear the costs of this defense on its own." The letter outlined the pending litigation in Colorado, California, and Washington and stated that the Colorado case alone was proving to be massively

11

costly, and GEO wrote that the "legal discovery costs could total several millions of dollars and potential damages could be in the tens of millions." On this news, the Company's stock fell $1.48, or 7.9%, to close at $17.24 per share on July 19, 2019, on unusually heavy trading volume.

31. GEO's letter to ICE dated February 14, 2018 states that the costs of these lawsuits is "significant":

> **GEO views its defense of these lawsuits and its potential liability as a cost of performance of its contracts with ICE. The potential costs are significant.** Thus far, GEO's legal fees and costs in *Menocal* [i.e., the Colorado lawsuit] exceed $1.6 million, which will increase sharply now that the Tenth Circuit has affirmed the class-certification. In the Washington litigation, the defense fees and costs are already approximately $440,000, and could quickly exceed $1 million once discovery begins, or increase exponentially if class-certification is granted in each lawsuit. Even more concerning is that there is the potential for damages under the TVPA [Trafficking Victims Protection Act] reaching as many as 60,000 detainees at the Aurora facility over 10 years, and claims for disgorgement of unpaid wages to VWP [Voluntary Work Program] participants stemming back multiple years.
>
> **Monetary damages in each of the Colorado, Washington, and California cases could reach several millions of dollars. Were GEO to receive an adverse judgment in any of these cases, GEO would have no alternative but to seek an equitable adjustment to cover the cost for past and future damages.** The impact is even more problematic given the reasonably foreseeable likelihood that this litigation would be repeated in other jurisdictions with antagonistic public officials seeking to target private federal contractors as a means of changing federal detention policy that DHS and ICE are in the best position to defend.

32. In a letter to ICE dated May 30, 2018, then-CEO defendant Zoley wrote that "[c]ontinued defense of these lawsuits is likely to cost $15-20 million with an expense of tens of millions in the event of a final negative ruling by the courts."

## VI. DENIAL OF THE MOTION TO DISMISS THE SECURITIES CLASS ACTION

33. On September 23, 2021, U.S. District Judge Rodney Smith denied-in-part the motion to dismiss by defendants in the Securities Class Action, including against GEO Group and Defendant Zoley. *See generally Hartel v. GEO Group, Inc.*, 2021 WL 4397841 (S.D. Fla. Sept. 23, 2021). While the statements about pending lawsuits were forward looking, Judge Smith found

that "[p]laintiffs have adequately pled that [d]efendants knew these statements were false when made." *Id.* at *10.

34.     Specifically, defendants knowingly made false statements that: "(1) the Company does not expect any pending claims or lawsuits to have a material adverse effect on its financial condition, results of operations, or cash flows; (2) the Company has not recorded an accrual relating to these matters at this time, as a loss is not considered probable nor reasonably estimable at this stage of the lawsuit; and (3) the Company does not expect the outcome of any pending claims or legal proceedings to have a material adverse effect on its financial condition, results of operations or cash flows." *Id.* at *12.

35.     To support these conclusions, Judge Smith relied on the letters made to ICE in early 2018 from GEO's management that "characterized the lawsuits as a 'potentially catastrophic risk' that exposed the Company to 'tens of millions' in potential damages and up to $20 million in legal expenses." *Id.* at *12, 14.

## VII.    DAMAGES TO THE COMPANY

36.     As a direct and proximate result of the Individual Defendants' conduct, GEO has been seriously harmed and will continue to be. Such harm includes, but is not limited to:

   a)     Any funds paid to settle the Securities Class Action; and

   b)     Costs incurred from compensation and benefits paid to the defendants who have breached their duties to GEO.

37.     In addition, GEO's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired.  The Company still has not fully admitted the nature of its false statements and the true condition of its business.  The credibility and motives of management are now in serious doubt.

38. The actions complained of herein have irreparably damaged GEO's corporate image and goodwill. For at least the foreseeable future, GEO will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that GEO's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## VIII. DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

39. Plaintiff brings this action derivatively in the right and for the benefit of GEO to redress injuries suffered, and to be suffered, by GEO as a direct result of the wrongdoing alleged herein. GEO is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

40. Plaintiff will adequately and fairly represent the interests of GEO in enforcing and prosecuting its rights.

41. Plaintiff has continuously been a shareholder of GEO at times relevant to the wrongdoing complained of and is a current GEO shareholder.

42. When this action was filed, GEO's Board of Directors consisted of defendants Zoley, Foreman, Kernan, and Wood and non-party directors Gordo, Thomas Bartzokis, Jack Brewer, Terry Mayotte, and Andrew Shapiro. Plaintiff did not make any demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

43. Zoley is the Company's founder and former CEO and therefore is not independent under NYSE listing rules. As a former employee, Zoley derives substantially all of his income from his employment with GEO, thus could not disinterestedly consider a demand for action that might require him to sue the directors that control his continued employment and/or his fellow members of management with whom he works on a day-to-day basis. He is also named as a

defendant in the Securities Class Action, and his motion to dismiss was denied due in part to his own non-public correspondence with the federal government conceding that the pending lawsuits posed significant costs to the Company. As a result, demand is futile as to him.

44. Gordo is the Company's CEO and therefore is not independent under NYSE listing rules. As an employee, Gordo derives substantially all of his income from his employment with GEO, thus could not disinterestedly consider a demand for action that might require him to sue the directors that control his continued employment and/or his fellow members of management with whom he works on a day-to-day basis. As a result, demand is futile as to him.

45. Foreman, Kernan, and Wood could not disinterestedly consider a demand because they served as directors at all relevant times, including when the misleading statements were made in SEC filings about the Company's financial and reputational risks in the pending lawsuits. Due to the contemporaneous acknowledgment in non-public correspondence of the "potentially catastrophic risk" of these lawsuits, Foreman, Kernan, and Wood knew or should have known of the same, and the failure to disclose these significant financial risks subjects them to a substantial likelihood of liability.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duty

46. Plaintiff incorporates by reference and realleges ¶¶ 1-45, as though fully set forth herein.

47. The Individual Defendants each owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of GEO's business and affairs, particularly with respect to issues as fundamental as public disclosures.

48. The conduct by the Individual Defendants set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. The Individual

Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of GEO.

49. In breach of their fiduciary duties owed to GEO, the Individual Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

50. In particular, the Individual Defendants knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report Company's overall prospects. Specifically, as alleged ¶¶ 30-32, the Individual Defendants knew or recklessly disregarded the rising costs of defending the Pending Lawsuits, yet they issued the materially misleading statements in ¶¶ 25-28 failing to disclose the same.

51. As a direct and proximate result of the breaches of their fiduciary obligations by the Individual Defendants, GEO has sustained and continues to sustain significant damages, including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets. As a result of the misconduct alleged herein, defendants are liable to the Company.

## COUNT II

**(Against Defendant Zoley for Contribution for Violations of Sections 10(b) and 21D of the Exchange Act)**

52. Plaintiff incorporates by reference and realleges ¶¶ 1-45, as though fully set forth herein.

53. The conduct of Defendant Zoley, as described herein, has exposed the Company to significant liability under various federal and state securities laws by his disloyal acts.

54. GEO is named as a defendant in related securities fraud lawsuit that allege and assert claims arising under § 10(b) of the Exchange Act. The Company is alleged to be liable to

private persons, entities and/or classes by virtue of many of the same facts alleged herein. As alleged in ¶¶ 33-35, these allegations against the Company were sustained due, in part, to Defendant Zoley's misconduct.

55. If GEO is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of all or some of the Defendants as alleged herein, who have caused the Company to suffer substantial harm through their disloyal acts. The Company is entitled to contribution and indemnification from these Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

56. As officers, directors and otherwise, Defendant Zoley had the power or ability to, and did, control or influence, either directly or indirectly, GEO's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated § 10(b) of the Exchange Act and SEC Rule 10b-5.

57. Defendant Zoley is liable under § 21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act.

58. Defendant Zoley has damaged the Company and is liable to the Company for contribution.

59. No adequate remedy at law exists for Plaintiff by and on behalf of the Company.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff, on behalf of GEO, demands judgment as follows:

A. Declaring that plaintiff may maintain this action on behalf of GEO and that plaintiff is an adequate representative of the Company;

  B. Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

  C. Declaring that Defendants have breached and/or aided and abetted the breach of their fiduciary duties to GEO;

  D. Directing GEO to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect GEO and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

    1. a proposal to strengthen the Company's controls over financial reporting;

    2. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

    3. a proposal to strengthen GEO's oversight of its disclosure procedures;

    4. a provision to control insider transactions; and

    5. a provision to permit the stockholders of GEO to nominate at least three candidates for election to the Board;

  E. Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of GEO has an effective remedy;

F. Awarding to GEO restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

G. Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

H. Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury.

Dated: September 2, 2022

By: */s/ Leo W. Desmond*
Leo W. Desmond
**DESMOND LAW FIRM, P.C.**
601 21st Street
Suite 300
Vero Beach, FL 32960
Telephone: 772-2321-9600
Fax: 772-217-6134
E-mail: lwd@desmondlawfirm.com

**GLANCY PRONGAY & MURRAY LLP**
Benjamin I. Sachs-Michaels
745 Fifth Avenue
New York, New York 10151
Telephone: (212) 935-7400
E-mail: bsachsmichaels@glancylaw.com

**THE PORTNOY LAW FIRM**
Lesley Portnoy
1800 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: 310-692-8883
E-Mail: lesley@portnoylaw.com

*Counsel for Plaintiff Gerardo Maldonado Jr.*